The questions raised by the exceptions to the master's report relate to the priority of claims of certain of the defendants.
The master reported the following order of priority of the various encumbrances, to wit:
1. Mortgage of complainant $2,611.60.
2. Mechanics' lien claims of Eastern Sash and Door Company $1,174.81, and Woodbridge Lumber Company $275.74, to be paid prorata.
3. Second mortgage of defendant Thomas Hand.
4. Third mortgage of defendant John M. Hand (exceptant) $841.83.
5. Eastern Sash and Door Company, on general judgment, $2,026.75.
The Eastern Sash and Door Company filed a mechanics' lien against the lands here involved and reduced the claim to judgment as against the builder and owner. None of the mortgagees were made parties defendant in the mechanics' lien proceeding.
The Woodbridge Lumber Company filed a mechanics' lien and brought suit thereon. In this suit the builder and owner and all mortgagees were made parties defendant. The builder and owner did not defend and judgment was entered against them by default. All the mortgagees, however, filed answers to this suit and the issues of priority thereby raised are still undetermined.
The exceptant claims that both the Thomas Hand mortgage and the John M. Hand mortgage are prior to both lien claims. As to the claim of Eastern Sash and Door Company, priority is claimed because these mortgagees were not made defendants in the mechanics' lien claim suit, as required by section 23 of the Mechanics' Lien Claim act. 1 Cum. Supp. Comp. Stat. p. 1856.
Priority as to the Woodbridge Lumber Company lien claim is asserted on the ground that the judgment of that company against the builder and owner is not evidence of the priority of the lien claim over the second and third mortgages, the matter still being undetermined in the suit at law. *Page 639 
The solicitors of the lien claimant defendants rely upon the case of Thompson v. Ramsey (1907), 72 N.J. Eq. 457, in which Chancellor Magie (at p. 464) said:
"The legislation which now requires a mortgagee, whose mortgage would be cut off by a sale upon a lien claim, to be made a party to the lien claim proceeding, does not prescribe what will be the effect of a failure to do so. It does not advance the omitted mortgage over the lien claim or over other mortgages."
The exceptant relies upon the case of Wix v. Frankel,87 N.J. Eq. 467, decided by Vice-Chancellor Lewis in 1917, in which it was held that the rights of a mortgagee not made a party defendant in a mechanics' lien suit were not affected by a judgment in that suit.
Without commenting upon this apparent diversity of opinion, I shall follow Wix v. Frankel, because it is the latest pronouncement of this court, and particularly as it seems to me to be in accordance with the principles of law long ago established by our court of last resort. In Jacobus v. MutualBenefit Life Insurance Co., 27 N.J. Eq. 604 (at p. 627), Justice Dixon, in discussing who were proper parties defendant to a mechanics' lien claim suit, said:
"From this premise, one logical conclusion seems to me to be that all those persons who, as mortgagees, at that time own any interest in the land which the lien claimant desires to subject to his lien, must be made defendants, as owners, else their estate will stand exonerated from the lien. The statute says that the claim shall designate the name of the owner of the estate inthe land upon which the lien is claimed; and by what course of reasoning can it be asserted that he who owns the mere shell, as it were, of the estate, must be afforded opportunity of contesting the claim, before it is conclusively established, but that he who owns the kernel, the substance of that estate, may be passed by unnoticed, unheard?"
That case was decided in 1876. The statutory provision respecting the estate in the land upon which the lien was claimed, referred to by Justice Dixon, remains unchanged, *Page 640 
but at that time there was no provision in the Mechanics' Lien act requiring mortgagees to be made parties defendant. Such provision was first made in 1884. P.L. 1884 p. 260; 2 Gen. Stat.of N.J. p. 2072. This provision was later incorporated in the Revision of 1898 (P.L. 1898 p. 547) and has been continued down to the present time. The cases cited by Justice Dixon in his opinion amply sustain his proposition "that upon no man's rights shall judgment be conclusively rendered until he have opportunity, or at least permission, to be heard thereon." If prior to the statutory requirement above referred to, the rights of a mortgagee not made a party defendant to a mechanics' lien suit could not be affected, certainly those rights ought to remain undisturbed after the enactment and under like circumstances. To hold otherwise, it would seem to me, would be to nullify this provision of the law.
With respect to the claim of Eastern Sash and Door Company, I am of the opinion that the mortgage of the exceptant is entitled to priority.
Exceptant also claims priority with respect to the claim of Woodbridge Lumber Company. I cannot agree with this contention. As the record stands, the question of priority as between the second and third mortgagees and the Woodbridge Lumber Company is at issue and undetermined in the law court. But it may be determined here on application for surplus moneys. No distribution affecting the rights of the second and third mortgagees and the Woodbridge Lumber Company will be made until this question is disposed of.
On behalf of the mechanics' lien claimants, it is insisted that the court has no right now to consider the question of priority as between the mechanics' lien claimant and the defendant Thomas Hand because Thomas Hand has not excepted to the master's report. The exceptions of the defendant John M. Hand, however, challenge the correctness of the master's report, not only as to John M. Hand's mortgage, but also as to the mortgage of Thomas Hand. The exceptant has a right to challenge the correctness of the master's report in all particulars. *Page 641 
I will advise an order sustaining the exceptions to the master's report to the extent of postponing the claim of Eastern Sash and Door Company to the claim of Thomas Hand and John M. Hand, and reserving the question as to priorities between the claims of Woodbridge Lumber Company and the Hand mortgages until an opportunity has been had to hear that issue.
There is a question of practice involved in this cause which ought not be passed unnoticed. In my judgment the practice pursued here is an excellent example of how not to do it. "It is not to be commended; in fact, should be discouraged." FranklinSociety v. Thornton, 85 N.J. Eq. 38.
Of the five defendants to this suit who held encumbrances subsequent to the mortgage which was the subject of foreclosure, one defendant filed the usual notice requiring that his encumbrance be reported upon; two filed notices requesting that their encumbrances be reported upon and disputing the priority of subsequent encumbrances as alleged in the bill, and two filed answers disputing the priority of subsequent encumbrances as alleged in the bill.
With the pleadings in this condition, a decree pro confesso
and order of reference was entered referring the matter to a master "to ascertain and report the amount due to the complainant for principal and interest upon the mortgages held by it * * * and also the amount due, if any," to the other defendants "upon their mortgages, lien claims and judgment and to report accordingly; and also to ascertain and report the order and priority of the said several mortgages, lien claims and judgment, respectively." This order was evidently entered as a routine matter, merely, because consented to by the solicitors of the two answering defendants. That there was no clear conception on the part of counsel at the time of the entry of the order as to why this course was being taken, is apparent from the fact that counsel now differ as to the authority for the proceeding, one solicitor suggesting that chancery rule 192 may justify the making of the order of reference and another suggesting that it was made pursuant to chancery rule 186. An examination of *Page 642 
these and other rules of the court indicates very clearly that neither chancery rule 186 nor 192 was ever intended to apply to a situation such as that disclosed by the record in this cause. Rule 186 authorizes a reference where the defendant gives notice that he desires to have his encumbrance reported upon but doesnot dispute the complainant's mortgage or the order of priorityof subsequent encumbrances as stated in the bill. Where the order of priority as stated in the bill is disputed, this rule does not apply. It will be noted that in the instant case two of the notices requesting a report on the defendants' encumbrances did, in fact, dispute the order of priority as alleged in the bill. The issues of priority thus raised should have been raised by answer and not by notice under rule 186. The bill was taken as confessed against all defendants, notwithstanding the issue of priority raised by these notices and notwithstanding that its entry was consented to by but two of the defendants.
Under the provisions of chancery rule 187, the bill having been taken as confessed against the defendants, the master had no right to fix the priority of subsequent encumbrances other than as stated in the bill. Such a controversy should be settled on application for surplus moneys. Mulford v. Williams, 8 N.J. Eq. 536.
Chancery rule 192 applies only where answers are filed and no question is raised thereby except such as may be properly referred to a master.
While it has been held that the only matter that can be considered upon exceptions to a master's report is the validity of those exceptions, and that the propriety of the reference cannot be reviewed because that is presumed to have been considered and determined when the reference was made (NationalBank v. Sprague, 23 N.J. Eq. 81) and while, of course, the chancellor is the one who is to decide what questions should "be properly referred to a master," it is not to be presumed that the chancellor, if the matter were properly presented to him by counsel, would refer litigated questions of law and fact to a master merely "to report" thereon. A reference may be made requiring a master either "to report" *Page 643 
or "to advise" the chancellor what order or decree should be made. When the order is "to report," that report may be the subject of exceptions before the chancellor or a vice-chancellor; but when the order is "to advise," no report is made, but adecree is advised, and that decree is not subject to review by a vice-chancellor. The reference in either instance may be made to a master or to a vice-chancellor, but when it is to a master "to advise," the master becomes, ad hoc, an advisory master. The instant case is one which, in my judgment, might properly have been referred to either a master or a vice-chancellor "to advise," but should not have been referred to a master "to report;" and would not have been so referred if the solicitors had understood the correct practice and had properly presented the matter to the chancellor.
There is no rule of chancery, so far as I am aware, which contemplates a situation where answers are filed by some defendants and notices to report on encumbrances of other defendants are also filed, especially where those notices dispute the priorities as alleged in the bill of complaint. Such a proceeding as that disclosed here, in effect, permits two trials of the same issue in the court of chancery, as upon exceptions to a master's report filed pursuant to rule 113, the same issues determined by the master are reviewable by the vice-chancellor who hears the exceptions and his findings are in turn reviewable by the court of errors and appeals. The parties having had one day in this court before a judge of their own selection (Franklin Society v. Thornton, supra), a review of this court's findings could now more properly be had by the court of errors and appeals. I consider the procedure followed here as an example of loose practice, which is responsible in large degree for the congestion in our courts. It is accordingly disapproved. *Page 644